ARTHUR W. HEIMER *vs.* FRED W. SALISBURY.

\* Third Judicial District, New Haven, June Term, 1928.

WHEELER, C. J., MALTBIE, HAINES, HINMAN and BANKS, Js.

Argued June 13th—decided July 19th, 1928.

\* Transferred from First Judicial District.

*Louis M. Schatz,* with whom, on the brief, were *Nathan A. Schatz* and *Julius B. Schatz,* for the appellant (plaintiff).

*Warren Maxwell,* for the appellee (defendant).

HAINES, J. The plaintiff-appellant, a motorcycle policeman in East Hartford, was injured by collision with defendant's automobile at the intersection of Burnside Avenue and Tolland Street on September 13th, 1926. Payments were made to him under the provisions of the Workmen's Compensation Act by East Hartford, and upon application the latter was joined as party plaintiff in this action.

Burnside Avenue is a public highway running approximately east and west, and Tolland Street branches from the northerly side of Burnside Avenue and runs in a northeasterly direction. Two lines of trolley car tracks are maintained on Burnside Avenue. There is a manhole cover at or near the intersection of Tolland Street and Burnside Avenue. The plaintiff was proceeding easterly on Burnside Avenue in the performance of his duty of patrolling the streets and, overtaking a trolley car, passed to the left of it. At this time the defendant in an automobile was driving in the same direction but was ahead of the trolley car and approaching the intersection of Tolland Street, which came into Burnside Avenue at his left. To this point there appears to be no essential dispute. The

defendant offered evidence that he signalled his intention to turn left into Tolland Street and turned across the eastbound trolley rails and a little east of the manhole which he passed to the right and which he claimed was the exact center of the intersection and stopped his car with the front wheels between the rails of the westbound tracks to allow two automobiles, traveling westerly, to pass in front of him; that while in this position the plaintiff's motorcycle came from the defendant's left and struck the front left wheel and fender of his car.

The plaintiff offered evidence that after he had passed the trolley car he turned to the center of the highway and continued to the point of collision; that he saw no signal given by the defendant at any time; that at the point of collision his motorcycle was struck by the left front wheel and fender of the moving car of the defendant, when both vehicles had reached a point midway between the east and westbound trolley rails.

The appeal is based, in the main, upon the claimed failure of the trial court to charge in several respects as requested by the plaintiff and upon errors in certain portions of the charge as made.

The court told the jury that the law imposed the same standard of care upon all users of the highway, i.e., the care which a reasonably prudent and cautious man would exercise in the same or similar circumstances, but that it was for the jury to say just what measure of care was required to meet this test, and added: "Obviously the conduct of a police officer in pursuit of a lawbreaker should be looked upon by a jury in the light of all the circumstances which the evidence shows to have surrounded him, but he must exercise that degree of care which a reasonably prudent man would have exercised if engaged in the same en-

deavor under the same circumstances. In this case the plaintiff was admittedly a police officer patrolling his beat, but there is no evidence that he was pursuing anyone. . . . The same may be said of his duty to keep a careful lookout. It is the duty of all users of the highway, and especially those in charge of vehicles such as are concerned in this collision, to make use of the public highway in a careful manner and keeping a careful lookout for danger, collisions of all kinds. The measure of care to be exercised under any given set of circumstances is for the jury to determine."

The appellant's criticism of this charge seems to be that the standard of duty for the police officer is said to be the same as for any other user of the highway. In this the court was right—the general standard of care which the law requires is the same for all using the highway—that which a reasonably prudent person would exercise under the same circumstances. In applying the rule it is for the jury to say whether, under all the circumstances of the particular case, the conduct of the party meets that standard—in other words, the law sets the standard and the jury measures the conduct of the party by it in view of the evidence before them. *Farrell* v. *Waterbury Horse R. Co.,* 60 Conn. 239, 247, 21 Atl. 657, 22 id. 544; *Messinger* v. *New York, N. H. & H. R. Co.,* 85 Conn. 467, 478, 83 Atl. 631; *Mezzi* v. *Taylor,* 99 Conn. 1, 11, 12, 120 Atl. 871.

The court then properly pointed out that the plaintiff was a police officer engaged in the performance of his duty, and that his conduct should be measured by the jury in view of that circumstance. The charge might still have been open to the claim of inadequacy if the court had failed to inform the jury of the statutory exemptions of an officer when so acting. The statute was read to them, however, and they were told

that the effect of its provisions was to exempt the plaintiff from the obligation to obey statutory rules of the road when it seems to be necessary for the proper and effective performance of his duty of enforcing the law.

The court should have further stated to the jury that in view of the *standard* of conduct which the law establishes, the *measure* of the plaintiff's conduct would be that of an ordinarily prudent and careful motorcycle police officer in the performance of his duty of patrolling the streets, taking into account the statutory provisions and the circumstances surrounding him. *Temple* v. *Gilbert,* 86 Conn. 335, 340, 85 Atl. 380; *Ferris* v. *Sperry,* 85 Conn. 337, 343, 82 Atl. 577.

Notwithstanding this, we think the jury could not reasonably have applied any other measure to the plaintiff's conduct in view of what had been said to them, and that they were nowhere misled to the prejudice of the plaintiff.

Other assignments of error relate to the charge upon the rules of the road. The plaintiff claimed the defendant violated two of these rules: First, in failing to give a seasonable signal of his intention to make a left turn, and, second, in failing to pass to the right of the intersection. As to the first claim, the record shows no evidence that the defendant did not give the signal, but simply that the plaintiff *saw* none. The defendant's evidence was that he gave the signal "before reaching the intersection," but there was no evidence as to how long before, either in time or distance. On this state of the evidence it would have been impossible for the jury to decide that the signal was not given seasonably.

On the second claim, that the jury were not correctly instructed on the legal requirements as to turning at street intersections, the criticism of the charge is that

though the jury were correctly told that passing to the right of the center was *not* negligence, they were not told that passing to the left *was* negligence. They had been instructed that the law required the defendant to go to the right, and they could hardly have failed to understand that the failure to do so *was* negligence, especially as the court had read the statute to them and had called their attention to this as one of the acts of negligence alleged in the complaint. In another place the court said: "One particular in which his conduct is claimed to have been negligent is that he failed to go around the center of the intersection of the two highways to the right," and it left it to the jury to decide as a question of fact whether he did or did not go the right of the intersection. If the jury had found that he went to the left, they could not reasonably have concluded that he was otherwise than negligent as claimed in the complaint. This is made more apparent when we consider that, later in the charge, the court told the jury specifically that if he passed to the right no negligence could be imputed to him, but if he passed to the left, the only question remaining for their decision was whether this conduct was the proximate cause of the injury.

Reading the charge as a whole, we find nothing which we would be justified in holding erroneous under all the circumstances of this case.

There is no error.

In this opinion the other judges concurred.